UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. __4:23CV-75-DJH__

**SUMMIT LOCATIONS, LLC**                                      **PLAINTIFFS**
311 East Street
Gordon, Ohio 45304

And

**HUNTINGTON OUTDOOR, LLC**
dba Huntington Billboards
311 East Street
Gordon, Ohio 45304

vs.

**CITY OF DAWSON SPRINGS, KENTUCKY**                           **DEFENDANTS**
c/o Chris Smiley, Mayor
200 W. Arcadia Avenue
Dawson Springs, KY 42408

And

**AMIE THOMAS**, *solely in her capacity as City Clerk, City of Dawson Springs, Kentucky*
200 W. Arcadia Avenue
Dawson Springs, KY 42408

## COMPLAINT

Now come the Plaintiffs, Summit Locations, LLC, and Huntington Outdoor, LLC, by and through counsel and hereby state as follows for their Complaint:

04846443-1

## PARTIES AND JURISDICTION

1. Plaintiff, Summit Locations, LLC ("Summit"), is a limited liability company organized and existing under the laws of the State of Ohio with its principal place of business at 311 East Street, Gordon, Darke County, Ohio 45304. For citizenship purposes, all members of Summit are citizens of the State of Ohio.

2. Plaintiff, Huntington Outdoor, LLC ("Huntington"), does business as Huntington Billboards and is a limited liability company organized and existing under the laws of the State of Ohio with its principal place of business at 311 East Street, Gordon, Ohio, Darke County, Ohio 45331. For citizenship purposes, all members of Huntington are residents of the State of Ohio.

3. Defendant, City of Dawson Springs, Kentucky ("City") is a municipal corporation under Kentucky law with its principal offices at 200 West Arcadia Avenue, Dawson Springs, Hopkins County, Kentucky 42408.

4. Defendant, Amie Thomas ("City"), is an individual employed by the City as its City Clerk with a business address of 200 West Arcadia Avenue, Dawson Springs, Hopkins County, Kentucky. The City Clerk is named as a party herein solely in her capacity as City Clerk and not individually.

5. Upon information and belief, the City Clerk is also the City's Zoning Administrator and/or is otherwise responsible for handling permit applications.

6. For citizenship purposes, the City and City Clerk are both citizens of the Commonwealth of Kentucky.

7. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, this being a civil action arising under the Constitution and the laws of the United Sates. Jurisdiction

is also conferred upon this Court by 28 U.S.C. § 1343(a)(3) and (4), 28 U.S.C. §§ 2201 and 2202 and 42 U.S.C. §§ 1983 and 1988, this being an action for declaratory judgment and equitable relief authorized by law to redress deprivations of rights under color of law, privileges and immunities secured by the Constitution of the United States.

8. Jurisdiction over state law claims is conferred by 28 U.S.C. § 1367 as authoritatively construed in *Chicago v. Illinois College of Surgeons*, 522 U.S. 156 (1997).

9. Jurisdiction is further proper in this Court as there is complete diversity of citizenship between Plaintiffs and Defendants pursuant to 28 U.S.C. Section 1332, and the amount in controversy, exclusive of interest and costs, is in excess of $75,000. The value of Plaintiffs' property, the damages incurred by Plaintiffs, and the value of the injunctive relief sought, as described below, is in excess of $75,000, exclusive of interest and costs.

10. Venue is proper in this judicial district by 28 U.S.C. § 1391(b) because Defendants maintain one or more offices in this judicial district. Venue is also proper because a substantial part of the events giving rise to the claims took place in this judicial district. Venue is proper in the Owensboro Division of this judicial district.

11. At all times pertinent to this Complaint, and in taking all of the actions described in this Complaint, Defendants, their officers, agents, and employees, acted under color of law and were effecting, and will effect, the custom, policy, and laws of a state.

12. Pursuant to KRS 418.075, Attorney General, Daniel Cameron, is provided notice of this action by serving a copy of this Complaint electronically at servethecommonwealth@ky.gov pursuant to direction of the Attorney General's Office.

Plaintiffs have, or will, comply with this and other applicable service and notice requirements of the Attorney General.

## FACTS

13. Plaintiffs, Summit and Huntington, are engaged in the business of outdoor advertising which consists broadly of owning or leasing real property upon which to construct and operate signs to be used for the dissemination of both commercial and noncommercial speech.

14. The term "outdoor advertising" is synonymous with the term "billboard." Billboards are frequently classified by reference to location of the sign as being "off-premise" meaning that the content communicated by the sign is not located on the premises of the sign whereas a commercial sign is an "on-premise" sign communicating content related to the activity where the sign is located.

15. Plaintiffs' signs convey commercial speech, such as the paid advertisements of businesses, as well as noncommercial speech consisting of such subjects as religious, political, and informational messages, and messages of not-for-profit organizations, both paid and unpaid. By way of example, recently a patient in urgent need of a kidney transplant, at the urging of his physician, utilized Plaintiffs' billboards to locate a kidney donor essentially saving his life. https://www.billboardinsider.com/huntington-billboards-matches-kidney-donor-with-patient/

16. The signs owned, controlled, and operated by Plaintiffs make valuable contributions to public discourse on a wide range of subjects. Plaintiffs' signs are often used to engage in current political and social discourse and are often employed by

customers on such subjects because they are relatively inexpensive and easily accessible to the public, both locally and to those engaged in interstate commerce.

17. Plaintiffs also publish their own messages, maintain editorial control over third-party speech that they publish, and publish certain speech on their signs without receiving financial compensation.

18. The content, diversity, and relevance of speech on outdoor advertising signs cannot be overstated. Such speech is constitutionally protected in the same manner and degree as speech communicated through other forms of public media such as newspapers, television, and the internet. A representative example of noncommercial content communicated through Plaintiffs' signs in Kentucky is attached as Exhibit 1.

19. The United States Supreme Court has recognized outdoor advertising as a "venerable medium" which has played "a prominent role throughout American history" and is afforded protections under the First Amendment of the United States Constitution. *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 500 (1981). Likewise, the Supreme Court of Kentucky recognizes the free speech protections of the First Amendment as applied to billboards. *Flying J Travel Plaza v. Commonwealth, Transp. Cabinet, Dept. of Highways*, 928 S.W.2d 344 (1996).

20. The City has adopted a zoning ordinance ("Zoning Ordinance") dated July 3, 1995 pursuant to Section 154.01 of the City's Code of Ordinances, a true and accurate copy of which is attached as Exhibit 2.

21. Among other things, the Zoning Ordinance regulates signage in the City, including billboards.

22. Section 2.18 of the Zoning Ordinance classifies signs by type. This Section defines outdoor advertising by using the traditional definition of signs displaying content that is "off premises" to where such sign is located.

23. Section 3.10 of the Zoning Ordinance governs outdoor advertising. It provides that off-premise signs: (i) shall not be located with 10 feet to a public right of way or 25 feet from a residential district; (ii) the maximum size is limited to 250 square feet per facing with double faced structures not to exceed the maximum size per side, but limited to two facings; (iii) be spaced at least 100 feet apart; and (iv) not be erected or constructed until a permit has been issued by the Zoning Administrator.

24. In addition to a zoning permit, the construction of an outdoor advertising sign in the City requires a building permit.

25. In the context of billboards and outdoor advertising, the Zoning Ordinance and the City treat the application for a zoning permit and building permit as a one process with a single form titled "Application for Sign Permit".

26. Pursuant to Part II, Zoning Administration, of the Zoning Ordinance, a procedure is established to submit an application for a building permit as follows:

> In applying to the Zoning Administrator for a building permit, the applicant shall submit a plan along with the application, drawn to scale, showing the dimensions of the lot to be built upon, the outside dimensions of all structures, yard depths and any other information for determining conformance with this Ordinance.

27. If the proposed construction conforms with the Zoning Ordinance, "the Zoning Administrator shall issue a building permit authorizing such construction or alteration." *Id.*

28. If the proposed construction does not conform with the Zoning Code, "the Zoning Administrator shall refuse to issue a building permit and shall cause delivery of written notice to the applicant stating the reasons for refusal." *Id.*

29. "The Zoning Administrator shall act upon applications for building permits within two (2) weeks from the date of their submission." *Id.*

30. On or about October 14, 2021, Summit entered into a Standard Lease Agreement with Los Patrones of Evansville, LLC, as titleholder/lessor of property commonly known as 507 East Arcadia Avenue, Dawson Springs, Kentucky (the "Premises"), granting Summit permission construct an outdoor advertising structure on the Premises.

31. On or about December 8, 2021, Summit submitted a sign permit application to the City to construct an outdoor advertising sign (the "Sign"), to be located on the Premises (the "Application").

32. The Application contained all required information for the City to make a decision as to whether a permit should be issued or refused.

33. The Application meets all requirements and the City is, and was, required to issue a permit for the Sign.

34. On December 14, 2021 the City suffered a natural disaster.

35. On January 14, 2022 an agent of Summit Locations, LLC contacted the City regarding the status of the permit and was advised that priority was being given to processing applications to rebuild homes destroyed by the natural disaster.

36. On March 29, 2022 an agent of Summit Locations, LLC contacted the City regarding the Application and was advised that the Application had been lost. Summit Locations, LLC resubmitted the Application by email the same day.

37. For several weeks Summit Locations, LLC contacted the City to check on the status of the Application and the City provided no updates or information.

38. On October 25, 2022, an agent of Summit Locations, LLC visited the City in person to check on the status of the Application. At this time, the City Clerk advised Summit Locations, LLC that a permit could not be issued until the Commonwealth of Kentucky Transportation Cabinet completed a road widening project.

39. The Sign is not to be built within the public right of way, as the project existed at the time of Application, and after the road widening project is to be completed.

40. The City is required to act upon the Application as the project exists at the time of the submission and not based on future potential changes. However, in this case the future changes do not alter that the Application meets all requirements for permitting.

41. The Sign is not on a state controlled route as designated the Commonwealth of Kentucky Transportation Cabinet. Consequently, a state permit is not required for the Sign.

42. Plaintiffs are respectful and cognizant that the City experienced a substantial natural disaster in December, 2021. However, even when allowing ample time to account for the disaster, the City's delay in this case is extreme. And, just as it is important to respect the obligation of the City to permit rebuilding residences after the disaster, it is likewise important to recognize that the Application implicates important free speech rights in addition to property rights.

43.     Far more than 14 days have elapsed and the City and City Clerk persist in their refusal to issue the permit or provide a written denial for the Application.

44.     On May 22, 2023, legal counsel for Plaintiffs wrote to the City as to the status of the Application and reminded the City of the 14 day requirement in the Zoning Ordinance.

45.     More than 14 days have elapsed since the letter was sent to the City and there has been no action upon the Application.

46.     To date, Defendants have refused to act upon the Application.

47.     Plaintiffs bring this action seeking relief as follows: for declaratory and injunctive relief that Summit is entitled to the issuance of a zoning permit and building permit; that Defendants' undue delay in acting upon the Application is unconstitutional; that, in the event Plaintiffs are not entitled to the issuance of a permit by the terms of the Zoning Ordinance, Defendants are required to immediately provide a decision regarding the Application, <u>and</u> if the decision is a denial: (1) provide specific proof and citations as to why the proposed Sign is not permitted; and (2) initiate prompt judicial review of any such denial; that the conduct described herein constitutes an impermissible restriction on free speech in violation of the First and Fourteenth Amendments of the United States Constitution and Sections 1 and 8 of the Constitution of the Commonwealth of Kentucky by unconstitutionally imposing a prior restraint of speech without the requisite procedural safeguards; for injunctive and declaratory relief pursuant to 28 U.S.C. §§ 2201- 2202 and KRS § 418.040; for monetary damages, attorneys' fees, expenses, and costs under 42 U.S.C. § 1983 and 1988; and for declaratory and injunctive relief regarding the parties' legal and constitutional rights as raised herein.

## COUNT ONE
## DECLARATORY JUDGMENT

48. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully rewritten herein.

49. In addition to the other claims and bases for relief, Plaintiffs seek declaratory judgment on all issues raised herein pursuant to the Kentucky Declaratory Judgment Act, KRS § 418.040, and the United States Declaratory Judgment Act, 28 USC §§ 2201-2202.

50. Under the Kentucky Declaratory Judgment Act and the United States Declaratory Judgment Act, Plaintiffs seek a declaration of the parties' legal rights and a permanent injunction as to Defendants' constitutional violations, in addition to all the other issues raised herein.

51. As a result of the above-described conduct, an actual, justiciable controversy now exists between Plaintiffs and Defendants.

52. KRS § 418.045 authorizes that any person whose rights are affected by statute, municipal ordinance, or other government regulation may apply for and secure a declaration of his rights or duties.

53. 28 USC § 2201 similarly authorizes that any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal regulations of any interested party seeking such declaration. 28 U.S.C. § 2202 adds that further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse parties whose rights had been determined by such judgment.

54. Under all of the circumstances alleged herein, substantial controversy exists between Plaintiffs and Defendants of sufficient immediacy and reality to warrant the issuance of a declaratory judgment regarding the parties' adverse legal interests.

55. By issuing declaratory judgment on the issues raised herein, this Court will settle the controversies between the parties, it will serve a useful purpose in clarifying the legal relations at issue, it will not raise procedural or res judicata concerns, it will not create friction between federal and state courts or encroach on state court jurisdiction, and it will provide an effective remedy. This Court should exercise its discretion under the United States Dedicatory Judgment Act to resolve the issues raised.

56. Plaintiffs seek a declaratory judgment that Summit is entitled to the issuance of building and zoning permits for the construction of the Sign; and that Defendants shall issue building and zoning permits to Plaintiffs for the construction of the Sign.

57. Alternatively, if this Court determines Plaintiffs are not entitled to a permit by the terms of the Zoning Ordinance, a declaratory judgment that Defendants are to immediately provide a decision regarding the Application, <u>and</u> if the decision is a denial: (1) provide specific proof and citations as to why the proposed Sign is not permitted; and (2) initiate prompt judicial review of any such denial.

58. Plaintiffs seek compensatory damages in an amount to be proven at the trial of this matter.

**COUNT TWO**
**VIOLATION OF THE FIRST AMENDMENT OF THE U.S. CONSTITUTION**
**AND**
**SECTIONS 1, 2, AND 8 OF THE COMMONWEALTH OF KENTUCKY CONSTITUTION**

59. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully rewritten herein.

60. The First Amendment of the United States Constitution guarantees that "Congress shall make no law … abridging the freedom of speech." The First Amendment of the United States Constitution is applicable to the Commonwealth of Kentucky and its cities through the Fourteenth Amendment of the United States Constitution.

61. Section 1 of the Constitution of the Commonwealth of Kentucky guarantees that all people have the "inherent and inalienable rights" of "freely communicating their thoughts and opinions," and of "acquiring and protecting property."

62. Section 2 of the Constitution of the Commonwealth of Kentucky expressly denies the exercise of "absolute and arbitrary power over the lives, liberty and property" of persons.

63. Section 8 of the Constitution of the Commonwealth of Kentucky states that "[e]very person may freely and fully speak, write and print on any subject…"

64. The United States Supreme Court and the Supreme Court of Kentucky have long recognized that billboards are a venerable medium of speech protected by the First and Fourteenth Amendments of the United States Constitution.

65. The Constitution protects Plaintiffs' signs and the noncommercial and commercial messages conveyed by the signs, by which Plaintiffs possess cognizable First

Amendment rights in the use and implementation of billboards, outdoor advertising, and signs.

66. More specifically, Plaintiffs have a constitutional right to a permitting and licensing scheme which employs the requisite procedural safeguards: the decision of whether to issue a permit must be made within a specified "brief" period; the licensing scheme must assure prompt judicial review and decision; and the burden of instituting judicial proceedings is on the government censor and not the speaker. *Freedman v. Maryland*, 380 U.S. 51, 56, 13 L. Ed. 2d 649, 85 S. Ct. 734 (1965).

67. The Zoning Ordinance's zoning permit requirement is a licensing scheme.

68. Under the terms of the Zoning Ordinance, Plaintiffs are entitled to a zoning permit for the proposed Sign.

69. Defendants have substantially delayed the review and the ultimate adjudication of the Application with the intention of preventing Plaintiffs from exercising their Constitutionally protected rights.

70. The delay has violated Summit's Constitutional rights to a brief period of review and a prompt judicial determination.

71. Accordingly, Defendants' undue delay in reviewing and adjudicating the Application, and its failure and refusal to issue a zoning and building permit for the Sign, are unlawful prior restraints on Plaintiffs' constitutional rights, and said actions are in violation of Plaintiffs' Constitutionally protected rights.

72. Unless restrained and enjoined, Defendants will continue to deprive Plaintiffs of the lawful ability to utilize a medium for expression of political, social, and commercial speech.

73.     Based upon the foregoing, Plaintiffs seek a judgment declaring Defendants' conduct as unconstitutional as applied to Plaintiffs, requiring Defendants to issue zoning and building permits to the Plaintiffs regarding the proposed Sign, and for compensatory damages in an amount to be determined at trial; and alternatively, if this Court determines Plaintiffs are not entitled to a permit by the terms of the Zoning Ordinance, a declaratory judgment that Defendants are to immediately provide a decision regarding Plaintiffs' Application and Appeal, <u>and</u> if the decision is a denial: (1) provide specific proof and citations as to why the proposed Sign is not permitted; and (2) initiate prompt judicial review of any such denial, and for compensatory damages in an amount to be determined at trial.

**COUNT THREE**
**VIOLATION OF SUBSTANTIVE AND PROCEDURAL DUE PROCESS IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION**

74.     Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully rewritten herein.

75.     The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law."

76.     Plaintiffs possess a cognizable property or liberty interest in the leasehold Premises and the operation of its billboards, including the proposed Sign. This interest is secured by the Fifth and Fourteenth Amendments of the United States Constitution, the Kentucky Constitution, and the Civil Rights Act, 42 U.S.C. Section 1983, *et seq*.

77.     By Defendants' acts, omissions, and conduct as set forth herein including, without limitation, failing to issue a zoning and building permit when the proposed Sign

meets the requirements of the Zoning Ordinance, substantially delaying the Application, Defendants have acted in an arbitrary, discriminatory, capricious, and unreasonable manner.

78. Defendants' actions were committed with the purpose and intent of preventing Plaintiffs from constructing the Sign.

79. The Defendants' actions bear no real or substantial relationship to any governmental interest.

80. Defendants have unlawfully and unreasonably refused to approve the Application and grant a permit, and have substantially delayed the review process for the same, thereby depriving Plaintiffs of their aforementioned rights.

81. Therefore, Defendants' conduct is unconstitutional.

82. Unless restrained and enjoined, Defendants will continue to deprive Plaintiffs of the lawful exercise of their liberty and property rights.

## COUNT FOUR
## VIOLATION OF CIVIL RIGHTS – 42 U.S.C. § 1983

83. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully rewritten herein.

84. Defendants acted intentionally with respect to the conduct described herein.

85. The aforesaid actions of Defendants deprive Plaintiffs of their rights under the Kentucky and United States Constitutions.

86. The aforesaid actions of Defendants were taken under color of state law and deprive Plaintiffs of their constitutional rights.

87. Plaintiffs are entitled to money damages from Defendants pursuant to 42 U.S.C. § 1983.

88. As a direct and proximate result of the aforesaid actions of Defendants, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT FIVE
## ATTORNEYS' FEES – 42 U.S.C. § 1988

89. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully rewritten herein.

90. Defendants have violated Plaintiffs' civil rights pursuant to 42 U.S.C. Section 1983.

91. Plaintiffs have expended, and continue to expend, significant amounts of money in order to bring this action to remedy Defendants' violation of their civil rights.

92. Plaintiffs are entitled to recover their reasonable attorneys' fees and costs incurred in bringing this litigation pursuant to 42 U.S.C. § 1988.

## COUNT SIX
## INJUNCTIVE RELIEF

93. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully rewritten herein.

94. Plaintiffs' constitutional rights are being violated by Defendants' actions.

95. Because Plaintiffs have already secured a leasehold interest in the Premises where the proposed Sign is to be constructed, Plaintiffs are and will continue to suffer immediate and irreparable injury, loss, and damage if: (1) Defendants are entitled to continue unlawfully withholding issuance of the requested permits, and (2) Defendants are entitled to continue delaying the Application.

96. Plaintiffs can show substantial likelihood of success on the merits of their claims that Defendants have unlawfully withheld the issuance of the permit and that Defendants have unlawfully delayed their review of the Application.

97. Issuance of an injunction would not cause harm to Defendants or third parties.

98. Moreover, the public interest would be served by granting Plaintiffs' request for injunctive relief.

99. As a result, Plaintiffs are entitled to injunctive relief against Defendants for their failure to issue zoning and building permits for the Sign and for their delay in acting upon the Application.

### COUNT SEVEN
### WRIT OF MANDAMUS

100. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully rewritten herein.

101. Defendants have, without any lawful basis, refused to issue zoning and building permits for the proposed Sign.

102. Per the terms of the Zoning Ordinance, the Defendants must issue a zoning permit and building permit if the Application meets the requirements of the Ordinance.

103. Plaintiffs' Application meets the requirements of the Zoning Ordinance.

104. Defendants' failure to issue a zoning permit and building permit for the proposed Sign has no lawful basis and Plaintiffs possess a clear legal right to the requested permits.

105. Accordingly, Plaintiffs request the issuance of a Writ of Mandamus compelling the issuance of the requested permits for the construction and operation of the proposed Sign.

106. Alternatively, if this Court finds that Plaintiff is not entitled to the issuance of a permit by the terms of the Zoning Ordinance, as a separate offense, Defendants have unlawfully delayed the Application.

107. Plaintiffs possess a clear legal right to a brief review and prompt judicial determination, with the Defendants being obliged to initiate judicial review and prove the proposed Sign is not permitted.

108. Defendants' failure to provide a brief review and adjudication has no legal basis.

109. Accordingly, Plaintiffs request the issuance of a Writ of Mandamus compelling Defendants to immediately provide a decision regarding Plaintiffs' Application, <u>and</u> if the decision is a denial: (1) provide specific proof and citations as to why the proposed Sign is not permitted; and (2) initiate prompt judicial review of any such denial.

WHEREFORE, Plaintiffs demand judgment as follows:

A. For a declaratory judgment and temporary, preliminary, and permanent injunctive relief declaring that Plaintiffs are entitled to the issuance of zoning and building permits for the Sign, as requested in Plaintiffs' Application, detailed herein;

B. For a declaratory judgment and temporary, preliminary, and permanent injunctive relief declaring that the Defendants' substantial delay in acting upon the Application, were and are unconstitutional, and that Plaintiffs are entitled to the

immediate review and adjudication of the Application, and should the review and adjudication result in a denial, Defendants be required to (1) provide specific proof and citations as to why the proposed Sign is not permitted; and (2) initiate prompt judicial review of any such denial;

C. For a declaratory judgment and temporary, preliminary, and permanent injunctive relief establishing that the acts, omissions, and conduct of Defendants as set forth herein constitute violations of Plaintiffs' free speech rights under United States and Kentucky Constitutions, and awarding compensatory damages pursuant to 42 U.S.C. § 1983 in amount to be determined at trial;

D. For a declaratory judgment and temporary, preliminary, and permanent injunctive relief establishing that the acts, omissions, and conduct of Defendants as set forth herein constitute procedural and substantive violations of Plaintiffs' due process rights under United States and Kentucky Constitutions, and awarding compensatory damages pursuant to 42 U.S.C. § 1983 in amount to be determined at trial;

E. For an award of compensatory damages in amount to be determined at trial;

F. For pre-judgment and post-judgment interest;

G. For an award of Plaintiffs' costs, disbursements, and reasonable attorneys' fees and expert fees incurred by Plaintiffs in connection with this action pursuant to 42 U.S.C. § 1988;

H. For a Writ of Mandamus requiring Defendants, to issue the requested permits for the construction and operation of the proposed Sign; alternatively, if this Court finds that Plaintiff is not entitled to the issuance of a permit by the terms of the Zoning Ordinance, a Writ of Mandamus compelling Defendants to immediately provide

a decision regarding the Application, <u>and</u> if the decision is a denial: (1) provide specific proof and citations as to why the proposed Sign is not permitted; and (2) initiate prompt judicial review of any such denial;

    I.     For the costs of this action;

    J.     For all other and further relief, both legal and equitable, to which Plaintiffs may be entitled.

                        Respectfully submitted,

                        /s/ Michael A. Galasso
                        Michael A. Galasso (88895)
                        Charles E. Rust (97930)
                        Robbins, Kelly, Patterson & Tucker, LPA
                        312 Elm Street, Suite 2200
                        Cincinnati, Ohio 45202
                        T: (513) 721-3330 | F: (513) 721-5001
                        mgalasso@rkpt.com
                        **Attorneys for Plaintiffs**
                        **Huntington Outdoor, LLC**
                        **Summit Locations, LLC**